### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

### STATE OF NEW-YORK,

### In October Term, in the sixty-fifth year of the Independence of the United States.

———————

CoE and others, suprintendents of the poor of the county of *Genesee vs.*
SMITH and others, superintendents of the poor of the county of *Allegany.*

An action will not lie by the *superintendents of the poor* of one county against the superinten-
dents of another county for the maintenance of a pauper removed from the county of the lat-
ter without legal authority, into the county of the former, where the removal is made at the
request of the pauper, so that he may be under the care of his family and friends, and with-
out *any intent on the part of the person removing him to make the county into which he is removed
chargeable with his support.*

It seems, that the bringing of a pauper into this state, will not subject the person bringing him
to the penalties of the act on this subject, unless it be done with the intent of subjecting some
particular town or county to the charge of supporting such pauper.

THIS action was tried at the Allegany circuit, in October, 1839, before
the Hon. ROBERT MONELL, one of the circuit judges.

*The suit was brought to recover moneys expended by the plain- [ *342 ]
tiffs in the support of a *pauper*, for whom it was alleged the de-
fendants were bound by law to provide. The plaintiffs in a special count of
the declaration alleged that on the 15th December, 1838, at Pike, in the
county of Allegany, one *Robert Flint* became sick and infirm, and according
to the provisions of the act entitled " Of the support and relief of indigent
persons," became chargeable to the county of Allegany; that afterwards, to
wit, on, &c. one *David Flint*, an inhabitant of Allegany, removed and trans-

ported Robert from the county of *Allegany* to the county of *Genesee*, with *intent to make the county of Genesee chargeable with the support and relief of Robert.* The plaintiffs also averred that Robert did become chargeable to the county of Genesee, and had been supported by such county as a *pauper* from the time of his removal to the commencement of this suit ; and that before and at the time of his removal, he was a *pauper*, and a charge upon the county of Allegany. The declaration also contained the common money counts.

On the trial of the cause it was shown that *Robert Flint* being a pauper and resident of the county of *Genesee*, was bound out by the superintendents of that county as an apprentice ; that he left his master and went to the residence of *Samuel Flint*, an uncle of his, in *Allegany*, where, in the month of August, 1838, he received a wound from a scythe, by which he was deprived of the use of one of his legs, and which disabled him from working ; that his uncle supported him and procured medical attendance for him until late in December, 1838, when, *at the request of the pauper*, he was removed to the residence of his *mother*, in the county of *Genesee*, who was very poor, and unable to provide for him. On the 31st Decmber, an overseer of the poor of the town in which the mother of Robert resided, took charge of him and supported him at his mother's house until the 11th February, 1839, when he was removed to the county poor house of Genesee, and there supported at the expense of the county, which was proved to be $90. The superintendents of Allegany *did not contribute to the support of the*
[ *343 ]          **pauper, whilst he remained at the house of his uncle.* The only interference on their part was, that on the day preceding the removal of the pauper, one of them called with a physician to ascertain his ability to undergo the fatigue of the removal. He was removed by *David Flint*, a son of *Samuel Flint.* The judge charged the jury that if there had been any interference by others, or if the pauper had received the aid or assistance of any person in his removal from Allegany to Genesee, the defendants were liable ; that it was wholly immaterial, as between the parties to the suit, who had procured such aid or assistance, or from what motive or with what intent it had been procured or rendered ; that the evidence fully established a sending and transporting of the pauper *within the meaning of the statute ;* and that there was no question for them to determine except the amount of damages which the plaintiffs ought to recover. The jury found for the plaintiffs with $90 damages. The defendants ask for a new trial.

*M. T. Reynolds*, for the defendants.

*C. P. Kirkland*, for the plaintiffs.

Albany, October, 1840.—Coe v. Smith.

*By the Court,* NELSON, Ch. J.    This action is given by statute ; and  the principle upon which it is to be maintained  will depend on a construction of several sections of  the act under which the suit is brought.

By the 63d section of 1 *R. S.* 633, any person who shall send, carry, transport, remove or bring, or who shall cause to be sent, carried, transported, brought or removed, any poor or  indigent person, from any city, town, or county to any other city, town or  county, without legal  authority,  and there leave such  poor  person *with intent  to  make* any *such city, town or county, to which the removal shall be made, chargeable, &c.* or *who  shall entice any such  poor  person to remove with such intent,* shall  forfeit fifty dollars. &c.    By the 64th section,  the pauper *so  removed, brought or enticed,* shall be maintained  by the  superintendents of the county where he may be ;  they shall give notice to the overseers *of the poor of   [ *344 ] the town from which he  was  brought or enticed if such town be liable for his support ;  if there be no town in the county  from which he was brought liable to his  support, then the  notice is to be  given to the superintendents of the  poor of such  county,  informing them of such *improper removal,* and requiring them to take charge of the  pauper.    By the 65th section, the superintendents  or  overseers to whom  notice is given shall within thirty days take and  remove the pauper, &c. or within that time  notify the superintendents  giving the notice, that *they deny the allegation of such improper enticing or removal,* &c.    By the 67th section, upon such notice of denial the superintendents shall within three months commence a suit against the overseers of  the poor of  the town, or the county superintendents or their successors, for the expenses incurred in the support of  such pauper, &c.

From an attentive consideration of these provisions it  appears obvious to me, that a *removal* of the pauper which will  charge the county with the expenses of his  maintenance,  must be  such as would subject the  person concerned in it to the penalties imposed by the 63d section of the act.    This is clearly the removal referred to throughout the several  provisions on the subject ; and  which the defendants were  required to deny.    The plaintiffs are to give notice to the  superintendents  of the county  from which the pauper was brought or enticed, informing them of such improper removal, and they are to deny the  allegation of such *improper  enticing or removal.*    This is the preliminary issue raised  between the parties before the  commencement of the suit.

The ground taken by the  plaintiffs supposes that the legislature  intended to prohibit a destitute  person,  or  one  who happened to be disabled, while temporarily residing in one county, from  returning to his family and friends residing in another, though he  might  choose to do so of his own mere motion ; or as a matter of  course, to charge  the county from which he thus removed with his support.    This  seems to me a forced and unreasonable con-

struction ; and overlooks *the intent of the removal*, which is made [ *345 ] an essential ingredient *to constitute the offence within the act, and is, I think, equally necessary to create the legal liability in the civil suit.

Even where a person brings a pauper from any place out of the state in-to· a county within it, he is neither subject to the penalty, or to the mainten-ance of the pauper, as imposed by the 64th section, without the existence of *an intent* to charge the county.

I am of opinion, therefore, that the learned judge erred, and that a new trial must be granted.